IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

GWEN ELIZABETH LANDERS,

                      Plaintiff,

  v.                                                                                                   OPINION and ORDER

MARTIN J. O'MALLEY,                                               24-cv-20-amb
Commissioner of Social Security,

                      Defendant.
_____

      Plaintiff Gwen Elizabeth Landers seeks review of the Commissioner of Social Security's decision denying her benefits under 42 U.S.C. § 405(g).  In her November 2021 application, plaintiff alleged that she had been unable to work since August 2019 due to impairments including fibromyalgia, a pilonidal cyst, and degenerative disk disease.  After her application was denied, she appeared at a hearing on reconsideration before an Administrative Law Judge (ALJ) in July 2023, who issued an unfavorable decision in August 2023.

      Plaintiff challenges the ALJ's decision on three grounds.  First, she argues the ALJ failed to credit her testimony about the pain and complications her impairments caused, in contravention of Social Security Rulings (SSR) 16-3p and 96-8p.  Second, she contends the ALJ failed to discuss her mental health limitations at step four or provide for those limitations in the residual functional capacity (RFC).  Third, she argues the ALJ erred in finding she could perform her past relevant work.

      For reasons stated below, the court affirms the ALJ's decision on the first two grounds and remands with instructions on the third ground.

JURISDICTION

Plaintiff filed an action in this court for review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1382(c)(3). The parties consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, in accordance with 28 U.S.C. §636(c) and Fed. R. Civ. P. 73. Dkts. 6, 12.

BACKGROUND

Plaintiff was fifty-seven when she applied for disability benefits on November 30, 2021. She alleges disability since August 1, 2019, caused by fibromyalgia, rheumatoid arthritis, diverticulitis, anxiety, PTSD, depression, herniated discs, COPD, psoriasis, periodontal disease, and scoliosis. After her application was denied, plaintiff requested and was granted a hearing before an ALJ on July 20, 2023. AR. 43.[1]

**A. Physical Medical History**

The main impairment plaintiff raised in her application was chronic pain caused by pilonidal cysts, degenerative disc disease, neuropathy, and fibromyalgia. She identified the pain caused by the pilonidal cyst as "one of the biggest impairments." AR. 46; AR. 795. She reported needing to use a special "donut type" pillow and to get up and walk around every five minutes due to the cyst. AR. 55. During a surgical consult in May 2021, a doctor recommended that plaintiff undergo a surgical excision to treat the cyst. AR. 534. She declined because she was not "interested" in dealing with post operative wound care. AR. 55–56.

---

[1] The administrative record is filed at Dkt. 7.

Plaintiff was also diagnosed with lumbar radiculopathy causing chronic low back pain with sciatica. AR. 564. She discontinued the NSAIDs she took to treat the pain due to gastrointestinal upset. AR. 537. As a result of her fibromyalgia, she was unable to lift more than five pounds. AR. 53. Per plaintiff, the pain and complications from the cyst, combined with the leg pain caused by her neuropathy, resulted in "difficulty sitting long enough to do sedentary type work." AR. 47. Between 2019 and 2021, plaintiff described her days as involving significant time lying down, icing her back, and taking Epsom salt baths. AR. 56–57. She testified that her partner, with whom she lived, was primarily responsible for cleaning and shopping. AR. 57.

State agency doctors who reviewed plaintiff's records opined that, due to plaintiff's physical impairments, she could sit "about 6 hours in an 8-hour workday." AR. 140, 150.

**B. Mental Health History**

Plaintiff was diagnosed with depression and generalized anxiety. She stated that her anxiety contributed to difficulty sleeping, interpersonal issues, poor concentration, and discomfort while driving. AR. 537, 595. She was prescribed sertraline but did not take it out of fear of side effects. AR. 535.

**C. Plaintiff's Work History**

During the hearing, plaintiff explained that she previously held an office job that involved administrative tasks, helping with payroll, lifting at most fifteen pounds, and sitting "most of the day." AR. 49. On a job history form, plaintiff reported that the job involved sitting seven hours a day. AR. 317.

Also at the hearing, a vocational expert (VE) explained that plaintiff's previously held office job was a composite of two DOT-recognized jobs, payroll clerk and administrative clerk.

3

AR. 61. This composite office job is semi-skilled and performed at light strength level. *Id.* The VE testified that someone with plaintiff's age, education, and past work experience could perform light work, provided they did not have to climb ladders, surfaces, or scaffolds or be subjected to any hazards. AR. 61–62. The VE also opined that employers allow employees to be off task ten percent of the time at most, and that one absence from work per month may be work preclusive. AR. 63. The VE concluded by commenting on how needing to change positions due to pain or discomfort may or may not impact an employee's ability to work.[2] *Id.*

**D. The ALJ's Opinion**

Following the hearing, the ALJ issued a decision denying plaintiff's benefits request. AR. 23– 36. Using the five-step analysis outlined in 20 C.F.R. § 404.1520, the ALJ found the following through December 31, 2021, which is plaintiff's date last insured: (1) plaintiff had not engaged in substantial gainful activity; (2) plaintiff suffered from degenerative disk disease, fibromyalgia, and a pilonidal cyst, which were severe impairments; (3) plaintiff did not suffer from an impairment that met or equaled the severity of a conclusively disabling impairment listed in 20 C.F.R. § 401, pt. 404, subpt. P, app. 1; (4) plaintiff had the RFC to do light work, defined in 20 C.F.R. § 404.1567(b), with restrictions on climbing and exposure to hazards, but no specific restrictions on time spent sitting and no provisions addressing the mental

---

[2] In the hearing transcript, the essence of the VE's answer, i.e., whether changing positions every ten minutes would preclude a person from performing the jobs plaintiff previously held, is ambiguous and not clear to the court. *See* AR. 63. As explained later in this opinion, the court is remanding and ordering the ALJ to explain and support with substantial evidence how plaintiff could perform her previous composite job of office/administrative clerk. If, on remand, the ALJ wants to rely on this part of the VE's testimony, he must clarify what the VE concluded and explain how the VE's testimony supports that conclusion.

limitations identified at step two; and (5) plaintiff could perform her past relevant work as a composite payroll/administrative clerk.

At step two, the ALJ reviewed the plaintiff's mental health impairments to determine whether she met the "paragraph B" criteria. AR. 27. To do so, a claimant must have either an extreme limitation in one of the four broad areas of functioning or marked limitations in two. *Id.* The ALJ found that plaintiff had mild limitations interacting with others and concentrating, persisting, or maintaining pace, *id.*, and determined that, despite the diagnoses of anxiety and depression, the record did not document any "significant limitations in [plaintiff's] ability to function socially, perform daily activities, or maintain her concentration, persistence, or pace." AR. 26–27.

Concluding step two, the ALJ noted that the RFC assessment at step four "requires a more detailed assessment" than the paragraph B analysis, then incorporated his paragraph B findings into the step four analysis, writing "[t]he following [RFC] analysis reflects the degree of limitation I have found in the "paragraph B" mental function analysis." AR. 28.

Plaintiff's RFC permitted light work with specific limitations on climbing and exposure to hazards but contained no express mental health limitations. AR. 29. At step four, the ALJ cited plaintiff's normal mental health examination and psychiatric findings and the opinions of the state agency psychological consultants to support his conclusion that mental health limitations were not necessary. AR. 30–31.

## LEGAL STANDARDS

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*,

5

950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Put succinctly, "the ALJ must 'explain her decision in such a way that allows us to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record.'" *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014), *as amended* (Aug. 20, 2014) (citing *McKinzey v. Astrue,* 641 F.3d 884, 890 (7th Cir. 2011)). Additionally, the court must defer to an ALJ's subjective symptom evaluation unless it is "patently wrong." *Primm v. Saul*, 789 F. App'x 539, 545 (7th Cir. 2019) (quoting *Murphy*, 759 F.3d at 816).

## ANALYSIS

Plaintiff argues three deficiencies with the ALJ's decision. First, she contends that her RFC, which permitted light work, is too liberal and resulted from the ALJ's failure to adequately assess the medical evidence in the record. Second, she argues that the ALJ failed to adequately address her mental limitations at step four and include those limitations in the RFC. Finally, she argues that the ALJ erroneously determined that she could perform her past relevant work when the record showed that her past work required sitting for seven hours a day and she was limited to sitting for six hours a day. The court addresses each argument in turn.

**A. Physical Health**

Plaintiff argues that the ALJ failed to support his RFC determination with substantial evidence when he (1) ignored her reasons for electing conservative care, (2) inappropriately relied on reports from a physical examination to evaluate her fibromyalgia symptoms,

6

(3) misrepresented physical examination findings related to her pilonidal cyst, and (4) failed to consider the effects of her neuropathy, arthralgia, and osteo and rheumatoid arthritis when crafting the RFC. Dkt. 8 at 13–14.

For the reasons discussed below, the court affirms the ALJ on these points.

1. **Conservative Care**

At step four, the ALJ supported his determination that plaintiff could perform light work by noting her "history of conservative care" and the lack of evidence of recurring emergency care or inpatient hospitalizations. AR. 31. In particular, the ALJ interpreted plaintiff's decision to forego surgery as evidence that her issues were manageable. *See* AR. 33. Challenging this characterization, plaintiff argues the ALJ failed to consider her reasons for electing conservative care. Dkt. 8 at 13–16.

The record does not support plaintiff's argument. The ALJ discussed plaintiff's symptoms and pain mitigating strategies at length during the hearing, AR. 45–47, 54–57, where plaintiff explained her day-to-day activities and her reasons for selecting or not selecting certain care options. AR. 55–56. Then, in his opinion, the ALJ explained that, while he agreed plaintiff's medical impairments likely caused the symptoms she reported, he found the severity of symptoms reported to be at odds with other medical evidence in the record, including her history of conservative care. AR. 29.

It is not error for the ALJ to be unpersuaded by plaintiff's testimony so long as he supports his conclusion with substantial evidence, which he did. The record supports that plaintiff's reasons for not undergoing surgery were based in personal preferences and not medical necessities. For example, plaintiff testified that she was not "interested" in dealing with the two-to-three-month cystectomy post-operative care, not that she was unable to have

7

the surgery or recover from it. AR. 55–56. Plaintiff claims "the ALJ . . . failed to consider that [she] moved across states . . . multiple times during the relevant period," Dkt. 8 at 15, but does not explain how that factored into choosing any particular care option.

The cases plaintiff cites are distinguishable from this case and highlight the reasonableness of the ALJ's decision. In *Westover v. Kijakazi*, No. 20-C-1347, 2021 WL 6144142 at *3 (E.D. Wis. Dec. 30, 2021), the court remanded a case where the ALJ failed to indicate whether he considered any reasons for plaintiff's lack of treatment, such as her indigency. In *Ray v. Berryhill*, 915 F.3d 486, 490 (7th Cir. 2019), the court held the ALJ erred by inferring plaintiff's symptoms were not severe after the plaintiff missed follow-up appointments without first exploring reasons why he missed them. The opposite is true here. Here, the ALJ heard and considered plaintiff's explanations for her conservative care—but he ultimately found them overcome by other evidence in the record.

The ALJ's findings on this point were supported by substantial evidence. The ALJ heard testimony about her physical impairments and treatments, AR. 45–47, 54–57, and discussed the evidence in the opinion, AR. 29–30.

**2. Fibromyalgia**

Plaintiff asserts that the ALJ improperly relied on reports of "grossly normal physical examination findings" to assess the severity of complications arising from her fibromyalgia. Dkt. 8 at 17. Plaintiff argues that fibromyalgia cannot be evaluated by objective tests, and that the ALJ impermissibly disregarded her testimony about the complications and pain caused by her fibromyalgia. *Id.* at 17–18. The court disagrees.

An ALJ uses a two-step method for evaluating a claimant's alleged symptoms. First, the ALJ must find that a medically determinable physical or mental impairment could reasonably

8

be expected to cause the allege symptoms. 20 C.F.R. § 404.1529(b). The ALJ found this to be the case regarding plaintiff's fibromyalgia. AR. 29. Second, once a medically determinable impairment is found, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit a claimant's work-related activities. § 404.1529(c). In doing so, if a claimant makes statements that cannot be substantiated by objective medical evidence, then the ALJ must consider other evidence in the record. *Id.*

Here, the ALJ did just that. First, the ALJ cited "grossly normal findings" reported during medical examinations in January, February, April, and November of 2019, February 2020, and January and May of 2021. AR. at 30. The ALJ then assessed the credibility of plaintiff's statements about her symptoms by examining the factors outlined in 20 C.F.R. § 404.1529(c), which include the individual's daily activities, level of pain or symptoms, aggravating factors, medication, treatment, and limitations. AR. 32. The ALJ stated that plaintiff's "recitation of her activities of daily living, her interactions with her partner and treating sources . . . and [plaintiff's] allegations regarding the limiting effects of her severe medical impairments" were considered and addressed by the RFC. AR. at 33. The ALJ concluded that "[plaintiff's] testimony and subjective complaints found throughout the record does not support further reduction of the established RFC." AR. 33.

"An ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it," *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017) (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (internal quotations omitted)), but the ALJ did not do that here. Rather, the ALJ discredited "statements concerning the intensity, persistence and limiting effects" of the symptoms caused by

9

fibromyalgia as they were not "consistent with the medical evidence and other evidence in the record," AR. 29, including the reports of "grossly normal findings."

This line of reasoning is comprehensible and supported by substantial evidence. The court does not question plaintiff's struggles with fibromyalgia pain. However, the court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgement for the ALJ's determination[.]" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Instead, the court is bound to let the ALJ's findings stand when they are supported by substantial evidence, as is the case here.

### 3. Pilonidal Cyst

Plaintiff argues that the ALJ misrepresented conclusions drawn from examinations of her pilonidal cyst when he stated, at various parts of the opinion, that plaintiff's "physical examinations revealed grossly normal findings" despite documentation of "slight edema two centimeters above the buttock and tenderness with palpation," and "four small pits, indicative of chronic infection in the past and exquisitely sensitive to touch in the buttocks area." Dkt. 8 at 18 (internal quotations omitted).

The ALJ did not misrepresent the examinations. In fact, the ALJ explicitly discussed the results in his opinion:

> The associated physical examination revealed grossly normal findings, except edema was noted[.] . . . The associated physical examination revealed grossly normal findings . . . except tenderness at the top of the buttocks along with the spine and slight edema were noted. Moreover, the record notes she was instructed to do Epsom salt bath/soaks. Further, during a physical examination performed on February 17, 2020, a slight fissure measuring 2 cm above the buttocks was noted and was tender when palpated.

AR. at 30 (citations omitted). Further, the ALJ considered the abnormal findings plaintiff cites when he crafted the RFC. The ALJ heard testimony about and discussed plaintiff's cyst during the hearing and was fully aware of its presence, symptoms, and treatment options. AR. 46–47, 54–58. This record does not support plaintiff's argument.

### 4. Neuropathy, arthralgia, and osteo and rheumatoid arthritis

Plaintiff argues the ALJ erred by finding her neuropathy and arthralgia not severe at step two, by omitting any discussion of her osteoarthritis and rheumatoid arthritis, and by failing to consider the effect of those impairments when determining her RFC. Dkt. 8 at 18. The Commissioner argues that plaintiff's argument about erring at step two is waived because it is too vague and generalized. Dkt. 13 at 8.

As a preliminary point, the court rejects the Commissioner's suggestion that plaintiff's argument is waived as overly vague and generalized. Ignoring the merits for a moment, the argument is clear to the court: plaintiff had four identified medical impairments whose impact on her ability to work was not considered at step four, which plaintiff contends was error. Fully comprehending what plaintiff is arguing, the court addresses the merits.

The court generally reads the ALJ's opinion as a whole and with common sense in mind. *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019). Moreover, the Seventh Circuit considers it a "needless formality to have the ALJ repeat substantially similar factual analyses" at different sequential steps. *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). Here, the ALJ sufficiently explained that "all other impairments mentioned in the record, but not discussed within this decision, have been considered and are found to be non-severe, as they do not have even a minimal effect on the claimant's ability to perform competitive work on a regular and continuing basis." AR. 28. The ALJ also stated that plaintiff's arthralgia and

11

neuropathy are "relatively minor, resolved, nonrecurring, or controlled." AR. 26. As a result, the ALJ did not discuss the impairments further at step four because he announced they did not factor into plaintiff's ability to perform work. AR. 27.

For all the reasons above, the court finds the ALJ's RFC determination supported by substantial evidence and affirms it.

## B.  Mental Health

Plaintiff asserts two arguments related to her mental health, one procedural and the other substantive. Dkt. 8 at 19. Procedurally, she argues that the ALJ erred by failing to provide a detailed analysis of her mental health impairments at step four, in violation of SSR 96-8p. *Id.* Substantively, she argues that the ALJ erred by not including mental health limitations in her RFC. *Id.* The court addresses the arguments in turn.

As to the procedural point, while it is true that SSR 96-8p commands a more detailed assessment at step four of the mental health limitations identified at step two, the rule must be read in context with the rest of the sentence: "The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment *by itemizing various functions contained in the broad categories found in paragraph B* of the adult mental disorders listing." (emphasis added). Thus, SSR 96-8p does not require a mere rehashing of the paragraph B discussion of mental health impairments at step four with additional detail for its own sake, but rather with the aim of itemizing the broad categories (e.g., interacting with others, concentrating, persisting or maintaining pace) into specific, actionable limitations in the RFC.

Previous cases in this court support this interpretation. For example, in *Quinnell v. Colvin*, No. 14-CV-601-BBC, 2015 WL 2371513, at *6 (W.D. Wis. May 18, 2015), during

the paragraph B analysis, the ALJ found that plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. *Id.* Then at step four, the ALJ simply stated in the RFC that the plaintiff had "moderate limitations in concentration, persistence and pace" without specifically identifying functional limitations within that broad area. *Id.* The court noted that SSR 96-8p's language commanding a "more detailed assessment" prohibited this kind of copy-pasting of the broad categories of impairments identified at step two into the RFC. *Id.*

*Quinnell* clarifies that 96-8p's "more detailed assessment" presumes that the mental health impairments identified at step two actually impact plaintiff's ability to work, and so require limitations in the RFC, which, the court ruled, must be more fleshed out and specific than a mere restatement of the paragraph B categories. This makes sense, as the purpose of step four is determining and explaining whether and how plaintiff can perform past relevant work given her impairments.

In this case, after determining that plaintiff's mental health impairments were non-severe and caused no more than mild limitations in two of the paragraph B categories, the ALJ emphasized that "the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities." AR. 28. Later at step four, the ALJ stated that "the totality of the record . . . fails to document significant functional limitations resulting from a mental impairment." The ALJ found plaintiff's mental health impairments so mild as to have a negligible effect on her ability to work and thus had nothing more to add at step four.

Even if it was error for the ALJ to not specify mental health limitations at step four, the error would be harmless because plaintiff has not articulated which specific limitations should have been included and how they would be inconsistent with the work currently permitted by

13

her RFC. *Demille v. Colvin*, No. 13-CV-329-BBC, 2014 WL 1207382, at *1 (W.D. Wis. Mar. 24, 2014) ("If plaintiff cannot point to any limitations that conflict with the [ALJ's] assessment, then any failure by the [ALJ] to be more specific is harmless.").

As to the substantive point, plaintiff argues that the ALJ erred by failing to include mental health limitations in her RFC after implying they were necessary. Dkt. 8 at 21. Plaintiff's argument is premised on her interpretation of one sentence in the ALJ's opinion where he states, "the limitations stated [in the RFC] . . . account for and accommodate . . . the claimant's severe impairments by *limiting the nature, complexity, and pace of her work activities and the nature and frequency of her interactions with others in the workplace*[.]" *Id.* (emphasis in original). Plaintiff contends this language implies the ALJ considered her mental impairments severe and deserving of limitations, but presumably forgot to include them in her RFC. *Id.*

The court is unconvinced. First, limiting the nature, complexity, and pace of plaintiff's work could accommodate physical limitations. Second, the court finds plaintiff's argument too speculative to credit it over the ALJ's explicit, repeated announcements that plaintiff's mental health impairments are non-severe and unimpactful on her ability to work. For example, the ALJ noted the lack of emergency care or inpatient psychiatric hospitalizations resulting from plaintiff's depression and anxiety, AR. 27, and that her daily routine, which included helping with light chores, listening to music, and socializing by texting, indicated non-severe mental impairments. *Id.* The fact that plaintiff worked for one employer from 2009 to 2016 also supported the ALJ's finding that her mental impairments caused only mild limitations. AR. 27–28.

For all the reasons above, the court finds the ALJ's treatment of plaintiff's mental health considerations supported by substantial evidence and affirms it.

**C. Past Work**

Plaintiff argues the ALJ erroneously determined she could perform her past work. Dkt. 8 at 12. Plaintiff's RFC states she could perform "light work as defined in 20 C.F.R. 404.15678(b)." *Id.* at 12. According to 20 C.F.R. 404.15678(b), if someone can do light work, they can also do sedentary work, unless there are limiting factors in the RFC, such as restrictions on sitting time. There are no such restrictions in plaintiff's RFC, so her RFC allows light and sedentary work. According to SSR 83-10, both light and sedentary work involve standing or walking "no more than 2 hours of an 8-hour workday and sitting should generally total approximately 6 hours." Plaintiff also notes that the ALJ found persuasive those doctors' opinions that report she could sit "[a]bout 6 hours" in a workday. Dkt. 8 at 13. But plaintiff's past work required sitting seven hours, according to her prior employment forms. AR. 317. Thus, plaintiff concludes, she cannot perform her past relevant work because her RFC allows for sitting approximately six hours per day, possibly more, while plaintiff's past work required sitting seven hours according to her prior employment forms.

Despite the importance of this determination, the ALJ failed to adequately address the disparity between the sitting time allowed by Social Security regulations and plaintiff's description of her past work. At step five, the ALJ relied on the VE's testimony to conclude plaintiff could perform her past work "as she performed it." AR. 35. Because plaintiff's office job is considered a "composite" of two DOT-recognized occupations, it cannot be evaluated as work "generally performed in the economy." AR. 35–36. Instead, at step five, the ALJ determined that plaintiff could perform her past work as she actually performed it. *Id.* This wrinkle has significant analytical implications.

15

That is because the only evidence of how plaintiff performed her past work with regards to sitting is plaintiff's testimony and prior job form indicating she sat for seven hours. AR. 317. The ALJ did not discuss—let alone dispute—that figure in his opinion. AR. 35–36. In his opinion at step five, the ALJ compared the demands of plaintiff's previous office job as actually performed by plaintiff to her RFC, but he provided no specifics of plaintiff's performance or his factual basis for determining it. *See id.* Nor did the Commissioner manage to refute that seven-hour figure in his response. The Commissioner dismissed plaintiff's assertion that her past work required sitting for seven hours as "unpersuasive," but offers only conclusory statements about the ALJ's "reasonable and accurate consideration" of the medical evidence as support. *Id.* at 14. At bottom, the record offers no reason to disbelieve plaintiff's claim that she performed her past work by sitting for seven hours.

The Commissioner accurately notes that the ALJ did not explicitly limit the time plaintiff could sit to six hours anywhere in his opinion. Dkt. 13 at 13. But the ALJ did not explicitly say she could sit for more than six hours. And although the state doctors did not explicitly limit plaintiff to sitting for six hours a day either, they did explicitly opine that plaintiff could sit "about 6 hours" a day, AR. 140, 150, consistent with the administration's guidelines for light and sedentary work. Sitting for an average of seven hours each day, which is how plaintiff performed her past work according to the uncontroverted evidence, is not "about 6 hours"—it is about seven hours. Attempts to salvage the ALJ's step five analysis by straining the boundaries of "approximately 6 hours" to include what was routinely seven hours are unconvincing.

This seemingly semantic dispute is controlling. "The decision as to whether the claimant retains the functional capacity to perform past work . . . has far-reaching implications

16

and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." SSR 82-62: Titles II and XVI. Either the ALJ agrees plaintiff cannot sit for seven hours given her physical impairments and does not dispute that is how she performed her past work, which would result in plaintiff being disabled and receiving benefits, or the ALJ determined she could sit for seven hours a day notwithstanding her myriad physical limitations that affect sitting and failed to articulate his reasoning anywhere in his opinion, which requires remand for failing to off substantial evidence.

Either way, too much hangs in the balance to let this issue go unresolved. On remand, the court ORDERS the Commissioner to resolve the discrepancy between plaintiff's testimony as to how she performed her past work and the limitations of her RFC and support that conclusion with substantial evidence. SSR 82-62: Titles II and XVI.

ORDER

IT IS ORDERED that:

1. The portion of the ALJ's opinion discussing plaintiff's ability to perform past relevant work is vacated and the case REMANDED to the Social Security Administration.

2. On remand, the ALJ shall resolve the discrepancy between plaintiff's testimony as to how she performed her past work and the limitations of her RFC and support that conclusion with substantial evidence.

Entered December 2, 2024.

BY THE COURT:

/s/

_____

ANITA MARIE BOOR
Magistrate Judge